RAGSDALE v. HARGREAVES, MAYOR.

4-5605                                129 S. W. 2d 967

Opinion delivered June 19, 1939.

*John C. Sheffield*, for appellant.

*C. L. Polk, Jr.*, for appellee.

MEHAFFY, J.   The appellant, Will Ragsdale, a property owner of the City of Helena, Arkansas, instituted this action seeking to enjoin the city of Helena from issuing bonds in the sum of $16,000.   The complaint alleges that the city of Helena, by an ordinance duly passed, called for an election, and a notice in pursuance of the ordinance was given.   The election was held on April 14th to determine if the city should issue bonds for the purpose of the purchase, development and improvement jointly with the city of West Helena of a flying field or airport.   It is alleged that a similar ordinance was passed in the city of West Helena, calling for an election on the same day for the purpose of determining whether the city of West Helena should issue bonds in the sum of $4,500 for the purpose of the purchase, development and improvement, jointly with the city of Helena, of a flying field or airport.   The election was held on the day named, and by the Mayors' proclamation of both Helena and West Helena, a majority had voted for a bond issue in each town.   It is alleged that the mayor of Helena and the mayor of West Helena are preparing to advertise for the sale of bonds in each city, the proceeds of both issues to be used for the purpose of financing the purchase, development, and improvement jointly with each other of the flying field or airport, and that the council would levy a special tax, not to exceed three mills to pay the principal and interest on said bonds.   It is alleged that under Amendment No. 13 of the Constitution there is no authority for the issuance of bonds and levying of a tax by each city for the purpose of development and improvement of a flying field or airport to be controlled by both cities and that the amendment only authorizes the issuance of bonds for a separate airport in the city; that the tax to be levied would be a cloud on appellant's real estate, and the prayer was that appellees be permanently enjoined from advertising the bonds for sale, and be en-

joined from delivering them to anyone, and from levying the tax to pay for them. It is alleged by the appellant that the suit is brought for himself and all others similarly situated who wish to join in the suit.

The appellees filed a demurrer stating that the complaint did not state sufficient facts to constitute a cause of action. The court sustained the demurrer and dismissed the complaint for want of equity, and the case is here on appeal.

It is the contention of appellant that Amendment No. 13 does not give authority to a city to go into a joint project with a neighboring city to develop and purchase an airport.

Amendment No. 13 provides, among other things: "Provided that cities of the first and second class may issue by and with the consent of a majority of the qualified electors of said municipality voting on the question at an election held for the purpose, bonds in sums and for the purposes approved by such majority at such election as follows: . . . for the purchase, development and improvement of public parks and flying fields located either within or without the corporate limits of such municipality."

Act No. 80 of the Acts of 1939 provides: "Any two or more municipal corporations in the State of Arkansas may own and hold in joint tenancy, by gift or purchase, lands for use as airports or flying fields, which may be located either within or without their corporate limits; and may enter into contracts or agreements with each other, duly authorized by ordinances, for their joint operation, control, maintenance, improvement and development."

Amendment No. 13 has been construed by this court in a number of cases. In the last case, *Todd* v. *McCloy*, 196 Ark. 832, 120 S. W. 2d 160, this court said: "The term 'for the development and improvement of public parks' is broad enough to include a stadium where visitors in the park may seat themselves to witness ball games or other forms of athletic entertainment incident to community life. Such a stadium would be an 'im-

provement' within the meaning of the amendment in question. Nor is validity of the objective impaired because of location of the property. The improvements may be 'either within or without' the corporation's territorial area."

Constitutional provisions should receive a reasonable construction, the purpose being to ascertain the meaning of the framers of the provision of the Constitution, and the intention of the electors in adopting the provision.

Amendment No. 13 gives express authority for the purchase, development and improvement of flying fields or airports located either within or without the municipality, and the legislature of 1939 adopted the emergency clause in Act No. 80, *supra,* and declared that for the public stafey, it was necessary to facilitate the construction of airports.

If a city may issue bonds for the purpose of acquiring or building airports without the aid of anyone, the fact that they get the aid of another city does not violate the provisions of the Constitution.

"The fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent of the framers and of the people who adopted it. The court therefore should constantly keep in mind the object sought to be accomplished by its adoption and the evils, if any, sought to be prevented or remedied." *Snodgrass* v. *Pocahontas,* 189 Ark. 819, 75 S. W. 2d 223; 12 C. J. 700.

It was contended, in the case of *Terry* v. *Overman,* Mayor, 194 Ark. 343, 107 S. W. 2d 349, that while Amendment No. 13 authorized the issuance of bonds for the construction of a library, it did not authorize the issuance of bonds to construct an addition or improvement to the structure already in existence. This court said: "The purpose of construing a constitutional provision is to ascertain and give effect to the intent of the framers and of the people in adopting it, and to this end it should receive a reasonable construction." Citing *Snodgrass* v. *Pocahontas, supra; Downen* v. *McLaughlin,* 189 Ark. 827, 75 S. W. 2d 227.

The manifest purpose of Amendment No. 13 was to authorize municipalities to purchase, develop and improve public parks and flying fields. If it was the intention to authorize municipalities to purchase, develop and improve flying fields, the mere fact that two cities instead of one undertake the improvement does not violate the Constitution.

It is contended, however, that cities cannot hold property jointly. The Supreme Court of California, in the case of *DeWitt et al.* v. *The City of San Francisco et al.*, 2 Cal. 289, said: "But in addition to this, there is a positive law passed on the 10th of April, 1852, which gives full power to the corporation of the city of San Francisco to purchase or rent a suitable building for a city hall, for said city, provided the amount to be expended does not exceed $125,000. This law does not conflict with the charter of 1851, in any of its provisions or restrictions. It is full and complete, and is as much obligatory and authoritative for all purposes within its purview as if it had been made part of the charter at its passage. And the only question in the way is, whether the title proposed to be acquired is contrary to the nature and character of the rights and existence of the corporation.

"It will be observed from the framing of the ordinance authorizing the purchase, that this particular state of the case was probably kept in view.

"The ordinance provides that the corporation shall purchase the undivided moiety of the building, and hold it in common with the possessor of the other undivided moiety which was to be bought by the county of San Francisco. To do this was lawful."

The California Court also said in that case: "The books and cases do not afford any instance in which this right of holding lands as tenants in common either with each other or with natural persons is denied to corporations. Not one of the reasons which work a want of capacity to hold as joint tenants would prevent their holding as tenants in common, for this estate requires but one unity, that of possession.

"So far from the corporations not being able to hold lands in common, the original condition at common law of the largest class of corporations known to the law, was that of holding all their lands in common with each other; and they were never separated until the original position produced inconveniences."

Airports are said to be as important to commerce as are terminals to railroads or harbors to navigation. The possession of an airport by a modern city is essential if it desires the opportunities for increased prosperity to be secured through air commerce. Wenneman on Municipal Airports, 418.

In 1926, the City of Pittsburgh, Pennsylvania, entered into a contract with Alleghany county, Pennsylvania, which provided for the appointment for a city-county Air Board, and prescribed the duties of the board. The director of the Department of Public Works representing the United States Government was a party to the contract. Wenneman on Municipal Airports, 637.

There is nothing in the Constitution that prohibits the Legislature from passing a law authorizing two cities to acqure and own a flying field, and the Legislature, as we have shown, has provided that two cities may do this, and if they have this authority, they necessarily have the authority to issue bonds and levy a tax to pay for said airport.

We find nothing in the Constitution that prohibits two cities from owning property as tenants in common.

The decree of the Chancery Court is affirmed.