RANKIN *v.* JONES.

5-680                                    278 S. W. 2d 646

Opinion delivered April 18, 1955.

[Rehearing denied May 23, 1955.]

1002

*Richard L. Pratt,* for appellant.,

*Oliver Clegg,* for appellee.

WARD, J.   The pivotal question to be answered on this appeal is:   Does the term of office of the Commissioner of State Lands of the State of Arkansas begin on the First day of January (following the General Election) or does it begin several days later when the Senate and House of Representatives declare the results of the election?

This proceeding originated in the Circuit Court of Pulaski County when the Attorney General, in a *quo warranto* proceeding, alleged that appellant, Mrs. Claude A. Rankin, and appellee, James Jones, were both claiming to be the duly appointed and acting Commissioner of State Lands, and asked that said parties be required to show by what authority he or she claimed to exercise the power of said office.   Both of said parties hereto responded, and the trial court, on January 27, 1955, adjudged that appellee, James Jones, was the lawful Commissioner of State Lands.   From this judgment of the trial court Mrs. Claude A. Rankin and the State of Arkansas have appealed.   The real issue however is between Mrs. Rankin and Mr. Jones and they shall hereafter be referred to as appellant and appellee respectively.

*Stipulation.*   All parties to this action signed a stipulation setting forth all of the facts upon which the

cause was heard and determined, the material portions of which are as follows:

1.  Claude A. Rankin became Commissioner of State Lands as a result of the General Election in 1952, and was a candidate to succeed himself at the General Election in 1954.

2.  County Election Commissioners mailed to the Secretary of State copies of the returns of the 1954 General Election for the office of Commissioner of State Lands.

3.  The Secretary of State, in the presence of the Governor, cast up the votes from the several counties finding that Claude A. Rankin had been elected to the said office, and said Claude A. Rankin, after receiving his commission from the Governor, took the oath of office on the First day of January 1955.

4.  On the Second day of January 1955 Claude A. Rankin died.

5.  On the Fifth day of January 1955, Francis Cherry, the Governor of Arkansas, appointed James Jones to the office of Commissioner of State Lands and issued to him a commission "to fill the vacancy caused by the death of Claude A. Rankin."

6.  On the Fifth day of January 1955 James Jones took the oath of such office and has at no time since relinquished said office.

7.  On the Eleventh day of January 1955 the Speaker of the House of Representatives, in the presence of both Houses of the General Assembly, opened and canvassed returns from the said General Election and declared the election of Claude A. Rankin as Commissioner of State Lands.

8.  On the Fourteenth day of January 1955 Orval Faubus, Governor of Arkansas, appointed Mrs. Claude A. Rankin to the office of Commissioner of State Lands and issued to her a commission "to fill vacancy created in the office of Commissioner of State Lands due to

Mr. Claude A. Rankin's failure to qualify after being duly elected'', and on said date she took the oath of office and appeared in the Land office and claimed the right to said office and has ever since so claimed.

*The Issue.* For the purposes of this opinion the issue may be stated in this manner: (a) If the term of the office of Commissioner of State Lands begins on January 1, then, upon Claude A. Rankin's death on January 2, the remainder of his two year term became vacant and James Jones is entitled to serve during the remainder of said term by virtue of his appointment to said office by the Governor on January 5th; (b) But if said term began, in this instance, on January 11th, then James Jones' tenure ended on that date and Mrs. Claude A. Rankin is entitled to serve during the remainder of said two year term by virtue of her appointment to said office by the Governor on January 14th.

*The Constitution and Statutes.* Certain portions of the Constitution, together with Amendments thereto, and certain Statutes are pertinent to a consideration of the issues, and, for the purpose of convenience, they are set out below in so far as they are material.

(a) Article 6, Section 1 of the original Constitution:

''The executive department of this State shall consist of a Governor, Secretary of State, Treasurer of State, Auditor of State, and Attorney General, all of whom shall keep their offices in person at the seat of government, and hold their offices for the term of two years and until their successors are elected and qualified, and the General Assembly may provide by law for the establishment of the office of Commissioner of State Lands.''

(b) Section 3 of said Article 6:

''The Governor, Secretary of State, Treasurer of State, Auditor of State, and Attorney General shall be elected by the qualified electors of the State at large at the time and places of voting for members of the General Assembly; the returns of each election therefor

shall be sealed up separately and transmitted to the seat of government by the returning officers, and directed to the Speaker of the House of Representatives, who shall during the first week of the session, open and publish the votes cast and given for each of the respective officers hereinbefore mentioned, in the presence of both houses of the General Assembly. The person having the highest number of votes for each of the respective offices shall be declared duly elected thereto; . . .''

(c) Section 1 of Amendment 37 to the State Constitution adopted in 1946:

''The Executive Department of this State shall consist of a Governor, Lieutenant Governor, Secretary of State, Treasurer of State, Auditor of State, Attorney General, and *Commissioner of State Lands,* all of whom shall keep their offices at the seat of Government, and hold their offices for the term of two years and until their successors are elected and qualified.'' (Emphasis supplied.)

(d) Section 61, Act 34 of 1875 [Ark. Stats., § 3-1017]:

''It shall be the duty of the Secretary of State, in the presence of the Governor, within thirty days after the time herein allowed to make returns of elections . . ., to cast up and arrange the votes from the several counties for each person voted for for any legislative, judicial or executive office, except the offices named in section *three, article six, of the Constitution,* and such persons as shall have received the highest number of votes for . . ., Commissioner of State Lands, . . .'' (emphasis supplied)

(e) Section 64 of said Act 34 of 1875 [Ark. Stats., § 3-1020]:

''The Speaker of the House of Representatives, during the first week of the session after each election for Governor, Secretary of State, Treasurer of State, Auditor of State and Attorney General, shall, in the presence of both houses of the General Assembly, open and publish the votes cast and given for each of the respective

officers hereinbefore mentioned. The person having the highest number of votes for each of the respective office shall be declared duly elected thereto; . . ."

(f)   Section 1, Act 154 of 1917 [Ark. Stats., § 12-112]:

"The term of office of . . ., the *Commissioner of State Lands, . . .*, shall begin on the first day of January following their election; . . ." (emphasis supplied)

*Appellant's principal contentions.* Appellant's argument for a reversal is based principally on the language and implications of Amendment 37 to the Constitution. It is pointed out that the executive officers named in Article 6, Section 1, of the original Constitution are exactly the same officers named in Section 3 of said Article. It is then pointed out, and we agree, that the terms of the officers named in Section 3 do not begin on the First day of January but later when they are declared elected. The argument then is that, since Amendment 37 adds the Commissioner of State Lands to those already mentioned in Article 6 Section 1 of the original Constitution, it follows that Section 3 of Article 6 was also amended to include the Commissioner of State Lands or, to the same effect, that it was the intention of the authors of Amendment 37 [as well as those voting thereon] to make the Commissioner of State Lands subject to the provisions of said Section 3 just the same as the Governor and the other officers mentioned therein. Related to this argument is the one also that the Commissioner of State Lands is a constitutional executive officer and that as such his election should be declared in the same way and at the same time as the other constitutional executive officers who are named both in Section 1 and 3 of said Article 6. In support of these general contentions appellant makes several specific arguments.

1.   Appellant says that the Constitution and its Amendments must be read and construed together, that the parts which are similar must be considered *in pari materia*, that they must be construed to avoid inconveniences and absurdity, and that we should keep in mind

the evil which was to be remedied by the amendment in this instance, citing numerous decisions in support. We deem it unnecessary to discuss these decisions because it may be conceded that the announced rules are correct statements of the law and we have given them due consideration. However we think these rules of construction are of little benefit to appellant when applied to the situation here. Of course Sections 1 and 3 of Article 6 must be read in the light of Amendment 37 but the whole question is does the amendment affect only said Section 1 or does it change both Section 1 and Section 3. We are unable to say that there is any material inconsistency in providing that the Commissioner of State Lands shall be a constitutional executive officer and at the same time providing that his term of office shall begin on January 1st. Likewise it is hardly understandable that Amendment 37 would have corrected any great existing evil even though it would definitely place the Commissioner of State Lands in the category of the other officers named in Section 3 of Article 6. The inescapable fact is that Amendment 37 did not mention Section 3 of Article 6 and does not contain any language which positively affects said Section 3, and we know of no urgent reason why we should at this time read into Amendment 37 language which it does not contain.

2. It is argued that the constitution is supreme over statutory enactments. This argument is based on the fact that Ark. Stats., § 12-112, copied above, provides that the term of office of the Commissioner of State Lands shall begin on the First day of January and it is concluded that this statute cannot prevail over a conflicting provision in the constitution. We must agree again that this is a correct statement of the law but the conclusion drawn therefrom by appellant begs the question at issue. The question for our decision is do the Constitution and Amendment 37 really conflict with the above mentioned statute.

3. A strong argument is made that in construing Amendment 37 consideration must be given to the intent of the sponsors as well as of those who voted for or

against it at the General Election. It is pointed out that, since the authors and the electors knew that all the executive officers named in Article 6 Section 1 were included also in Section 3, the authors and electors must have intended the Commissioner of State Lands to be included in Section 3 because he was included in Section 1. In this same connection attention is called to the fact that the authors and electors also knew that the Lieutenant Governor [who was placed in said Section 1 by Amendment 6] had for many years been treated by state officials as also belonging in said Section 3. The last assertion will be treated more fully later. In support of the proposition that *intent* must be taken into consideration appellant cites *Ragsdale* v. *Hargraves, Mayor,* 198 Ark. 614, 129 S. W. 2d 967, 123 A. L. R. 993, and *Bailey, Lieutenant-Governor* v. *Abington,* 201 Ark. 1072, 148 S. W. 2d 176. Again it would serve no useful purpose to discuss these decisions because the principle they announce may be conceded. We think however this argument is not persuasive when applied to the facts of this case and when considered together with other well established rules of construction.

*First.* At the time of the adoption of Amendment 37 there had been in existence since 1875 the statutes carried in Ark. Stats. as § 3-1017 and § 3-1020, copied above, and there had been in existence since 1917 Section 1 of Act 154 carried as Ark. Stats. § 12-112 which states that the term of office of the Commissioner of State Lands shall begin on the First day of January. It might more reasonably be said that the authors of Amendment 37 and the electors also had these statutes in mind.

*Second.* In the case of *Pruitt* v. *Sebastian County Coal & Mining Co.,* 215 Ark. 673, 222 S. W. 2d 50, this court had this to say concerning *intent*:

". . . implied amendments cannot arise merely out of supposed legislative intent in no way expressed, however necessary or proper it may seem to be. An amendment by implication can occur only where the terms of

a later statute are so repugnant to an earlier statute that they cannot stand together.''

Again in this same connection, in the case of *McDonald v. Wasson,* 188 Ark. 782, 67 S. W. 2d 722, we quoted with approval the following:

" 'The intention and meaning of the Legislature must primarily be determined from the language of the statute itself, and not from conjectures *aliunde.* * * * No motive, purpose, or intent can be imputed to the Legislature in the enactment of a law other than such as are apparent upon the face and to be gathered from the terms of the law itself.' "

Although the case just cited was dealing with the construction of a statute yet the same rule applies to the construction of the constitution and to amendments, as was stated in *Bailey* v. *Abington,* supra, at page 1079 of the Arkansas reports; "The rules governing the construction of constitutional amendments are the same as those governing the construction of statutes." It must be conceded here that Amendment 37 in no way referred directly to Section 3 Article 6 of the Constitution, and the law does not favor amendments by implication. In the *Pruitt* case, supra, we quoted with approval:

" 'Amendments by implication, like repeals by implication, are not favored and will not be upheld in doubtful cases. The legislature will not be held to have changed a law it did not have under consideration while enacting a later law, unless the terms of the subsequent act are so inconsistent with the provisions of the prior law that they cannot stand together.' "

As was said in *State* v. *Scott,* 9 Ark. 270, "The Constitution, like all other deeds or charters, is to be construed according to the sense of the terms used and the intention of its authors."

4. Perhaps the most impressive argument appellant makes is that Amendment 37 should be interpreted as placing the Commissioner of State Lands within the provisions of Section 3 Article 6 because, it is said,

Amendment 6 to the Constitution is like Amendment 37 and it has been construed by usage as placing the Lieutenant Governor in the provisions of said Section 3. Of course we are not called on here to decide whether or not state officials have correctly construed the provisions of said Amendment 6 , but we do call attention to the fact that the two amendments do not carry the same provisions with reference to the issue under consideration. Amendment 6 Section 1 places the Lieutenant Governor in Section 1 of Article 6 of the Constitution exactly the same as Amendment 37 Section 1 places the Commissioner of State Lands in Article 6 Section 1. There is no other language in Amendment 37 touching upon the term of office of the Commissioner of State Lands, but there is in Amendment 6. In Section 2 thereof it is provided that ''the executive power shall be vested in the Governor who shall hold office for two years; a Lieutenant Governor who shall be chosen at the same time and for the *same term.*'' (Emphasis supplied.) Amendment 6 has Section 3 which provides for the election of a Lieutenant Governor just the same as the Governor in case of a tie as is provided for in Article 6 Section 3 of the Constitution. Also Section 4 of Amendment 6 provides for the Lieutenant Governor to act if the Governor for any reason is incapacitated. It is important that the terms of the two offices should be the same so that there could be no hiatus in office if the Governor is incapacitated.

Amendment 37 dealing with the Commissioner of State Lands has no such provision as those just mentioned but on the other hand it is significant that it raises the salary of the Commissioner of State Lands along with other state officers. Speaking of *intent,* it is reasonable to assume that the real intent and purpose of Amendment 37 was two-fold, as it applies to the Commissioner of State Lands: 1. By making the Commissioner of State Lands a constitutional executive office the Legislature would have no power to abolish the office as it had previously thereto. 2. The salary, as stated, of the Commissioner of State Lands was also increased.

We cannot believe there was any actual intent or reason to change the date when the term of office should begin. If such intent and reason had existed it would have been easy for the authors of Amendment 37 to have inserted therein the appropriate language. We do not feel justified in doing what they, by intent or oversight, failed to do.

It follows from what we have said above that the judgment of the trial court must be sustained.

Affirmed.

Justice MILLWEE dissents.

The Chief Justice and Justice McFADDIN not participating.