STATE OF ARKANSAS, EX REL JOE PURCELL, ATTORNEY GENERAL AND WALTER GREEN, *v.* JIMMY JONES, STATE AUDITOR, NANCY J. HALL, STATE TREASURER, AND CECIL ALEXANDER ET AL LEGISLATORS

5-4260                                        412 S. W. 2d 284

Opinion delivered March 13, 1967

*Joe Purcell*, Attorney General; *Thomas A. Glaze,* Asst. Atty. Gen., for appellant.

*Walls Trimble* and *Bruce T. Bullion*, for appellee.

J. FRED JONES, Justice. This appeal is from an adverse decision of the Pulaski County Chancery Court in a taxpayer's suit to test the constitutionality of Act 85 of the Acts of the General Assembly of the State of Arkansas for 1967.

On January 19, 1967, by proper procedure, the 66th General Assembly extended the regular session of the Legislature beyond the period of sixty days and, thereafter duly enacted Act 85, which appropriated revenues to pay the members of the Legislature for their services

on a per diem basis of $20.00 per day during the extended portion of the session. The germane portion of Act 85 is as follows:

> "SECTION 1. There is hereby appropriated, to be payable from the Constitutional and Fiscal Agencies Fund, for the payment of per diem of members of the House of Representatives of the Regular Session of the 66th General Assembly for additional days served during the extended session of the regular session of the 66th General Assembly, the sum of $4,000.00. The funds appropriated herein shall be distributed in the same manner provided by Act 2 of 1967 concerning disbursement of funds appropriated for the House of Representatives of the 66th General Assembly.

> "SECTION 2. There is hereby appropriated, to be payable from the Constitutional and Fiscal Agencies Fund, for the payment of per diem of members of the Senate of the Regular Session of the 66th General Assembly for additional days served during the extended session of the regular session of the 66th General Assembly, the sum of $1,400.00. The funds appropriated herein shall be disbursed in the same manner provided by Act 1 of 1967 concerning disbursement of funds appropriated for the Senate of the 66th General Assembly."

The state of Arkansas through its Attorney General intervened as a petitioner and the members of the Legislature intervened as respondents. The Chancellor held Act 85 to be constitutional and petitioners have appealed to this court.

We have been furnished excellent briefs on both sides of the issues in this case, and both the Attorney General for the State, and the attorney for the members of the Legislature, presented very able oral arguments in support of their opposing views of the issue involved.

Appellants rely on the following two points for reversal:

"Section 16 of Article 5 of the State Constitution as amended by Amendment No. 5, prohibits the General Assembly from receiving any per diem in an extended session.

"Even if Section 16 of Article 5 of the State Constitution, as amended by Amendment No. 5, was construed as having been repealed in its entirety, Amendment No. 48 does not authorize payment of per diem beyond the Regular Session of sixty (60) days."

Article 5 of the Constitution of the State of Arkansas is entitled "Legislative Department" and contains forty-one sections. Section 5, entitled "Time of Meeting" provides that the General Assembly shall meet at the seat of government every two years on the first Tuesday after the second Monday in November until said time be altered by law. This time has been altered to the second Monday in January (Ark. Stat. Ann. § 4-101 [1956 Repl.]).

We are concerned here with Section 17 entitled "Duration of Sessions," and also with Section 16 entitled "Per Diem and Mileage of General Assembly." Amendment No. 48 is the most recent of five amendments affecting Section 16 of Article 5 since the Constitution was adopted in 1874, and we are especially concerned with what effect subsequent amendments to the Constitution have had on Section 16.

When the Constitution was adopted in 1874, Section 16 of Article 5 read as follows:

"The members of the General Assembly shall receive such per diem pay and mileage for their services as shall be fixed by law. No member of either

house shall, during the term for which he has been elected, receive any increase of pay for his services under any law passed during such term. The term of all members of the General Assembly shall begin on the day of their election.''

By amendment in 1902, the words ''per diem,'' were deleted from Section 16 (Acts 1901 p. 412).

By Amendment No. 5, adopted in 1913, (Acts 1913 p. 1525) Section 16 of Article 5 was amended to read as follows:

''Each member of the General Assembly shall receive six dollars per day for his services during the first sixty days of any regular session of the General Assembly, *and if any regular session shall be extended, such member shall serve without further per diem.* Each member of the General Assembly shall also receive ten cents per mile for each mile traveled in going to and returning from the seat of government, over the most direct and practicable route. When convened in extraordinary session by the Governor, they shall each receive three dollars per day for their services during the first fifteen days and if such extraordinary session shall extend beyond fifteen days, they shall receive no further per diem. They shall be entitled to the same mileage for any extraordinary session as herein provided for regular sessions. The terms of all members of the General Assembly shall begin on the day of their election, and they shall receive no compensation, perquisite or allowance whatever, except as herein provided.'' (emphasis supplied)

It is the italicized portion of this amendment which petitioners contend voids Act 85.

In 1927 Amendment No. 15 to the Constitution was adopted (Acts 1927 p. 1189, Acts 1929 p. 1519). This amendment is as follows:

"The members of the General Assembly shall receive as their salary the sum of one thousand ($1,000) dollars, except the Speaker of the House of Representatives, who shall receive his salary of eleven hundred ($1,100) dollars for each period of two (2) ye rs.; and in addition to such salary the members of the General Assembly shall receive five cents per mile for each mile traveled in going to and returning from the seat of government over the most direct route; and provided further that when said members are required to attend an extraordinary session of the General Assembly, they shall receive in addition to the salary herein provided the sum of $6 per day for each day they are required to attend, and mileage, at the same rate herein provided."

This Amendment No. 15 contained a clause repealing all parts of the Constitution in conflict with it. It will be noted that by this Amendment No. 15, the members of the General Assembly were placed on a biannual salary for the first time since the adoption of the Constitution in 1874, and after the adoption of Amendment 15, the members of the General Assembly were no longer entitled to per diem pay except when required to attend an extraordinary session.

In 1945 Amendment 37 was adopted (Acts 1945 p. 765, Acts 1947 p. 1076). Section 3 of this amendment is as follows:

"The members of the General Assembly shall receive as their salary the sum of twelve hundred ($1,200) dollars, e. ept the Speaker of the House of Representatives, who shall receive his salary of thirteen hundred and fifty ($1,350) dollars, for each period of two (2) years; and in addition to such salary the members of the General Assembly shall receive five cents per mile for each mile traveled in going to and returning from the seat of government

over the most direct and practicable route; and provided, further, that when said members are required to attend an extraordinary session of the General Assembly, they shall receive in addition to salary herein provided, the sum of $6 per day for each day they are required to attend, and mileage, at the same rate herein provided.''

This amendment also specifically repealed all parts of the Constitution in conflict with it, and Section 3 of this Amendment 37, simply increased the biannual salary of the members of the General Assembly from $1,000.00 to $1,200.00 except the Speaker of the House, and his salary was raised from $1,100.00 to $1,350.00.

By adoption of Amendment No. 37, the members of the General Assembly were given the first raise in salary they had received since they were first placed on a biannual salary in 1927, and again no per diem pay was provided for in Amendment No. 37 except the six dollars per day for each day they were required to attend extraordinary sessions.

After the adoption of Amendment No. 37, the members of the General Assembly received no further increase in salary for the next thirteen years until Amendment No. 48 was adopted in 1957. (Acts 1957 p. 1488). Amendment No. 48 is as follows:

''The members of the General Assembly shall receive as their salary the sum of Twelve Hundred ($1,200.00) Dollars *per annum,* except the Speaker of the House of Representatives, who shall receive his salary of Thirteen Hundred and Fifty ($1,350.-00) Dollars per annum, with such salaries to be payable in equal monthly installments; *and in addition to such salary the members of the General Assembly shall receive Twenty ($20.00) Dollars per day for each day the General Assembly is in regular session,* and shall receive five cents per mile for each

mile traveled in going to and returning from the seat of government over the most direct and practicable route; and provided, further, that when said members are required to attend an extraordinary session of the General Assembly, they shall receive in addition to salary herein provided, the sum of Six ($6.00) Dollars per day for each day they are required to attend, and mileage, at the same rate herein provided.'' ( mphasis supplied)

This amendment also provides that:

''All provisions of the Constitution of the State of Arkansas in conflict herewith are hereby repealed.''

Thus it is seen that Amendment No. 48 doubles the ''salary'' of the members of the General Assembly by changing the amount for each period of ''two years'' in Amendment No. 37 to the same amount ''per annum'' in Amendment No. 48. The ''salary'' is made payable in equal monthly installments by Amendment 48 and for the first time in approximately forty years, per diem pay was reinstated, this time at $20.00 per day for each day the General Assembly is in regular session, and with no additional limitations if such regular session is extended. For extraordinary sessions the sum was continued at $6.00 per day under Amendment No. 48.

We are of the opinion that the first point relied on by the appellants has already been answered adversely to their contentions in the case of *Berry* v. *Gordon,* 237 Ark. 547. In that case the constitutionality of Act 339 of the Arkansas Legislature was under attack in a taxpayer's suit to prevent the payment of certain extra expense funds to the Speaker of the House of Representatives as well as to other state officers under the Act. In connection with the proper disposition of the problem in the *Gordon* case, it became necessary to examine Amendment No. 5 as to its validity since the adoption of later amendments including Amendment No. 48. In that case

we held that Amendment No. 5 has been repealed by subsequent amendments, and that Amendment No. 48 is complete on the subject of compensation for the members of the General Assembly.

Part of the text of the opinion in the *Gordon* case is so germane to the issue here, we can do no better than quote from that decision where Mr. Special Justice Boyd Tackett, speaking for this court said:

"The two familiar rules or classifications applicable in determining whether or not provisions of the Constitution have been repealed are set forth in the case of *Babb* v. *El Dorado*, 170 Ark. 10, 278 S. W. 649:

"One is that, where the provisions of two statutes are in irreconcilable conflict with each other, there is an implied repeal by the latter one which governs the subject matter so far as relates to the conflicting provisions, and to that extent only.

"The other one is that a repeal by implication is accomplished where the Legislature takes up the whole subject anew and covers the entire ground of the subject matter of a former statute and evidently intends it as a substitute, although there may be in the old law provisions not embraced in the new.

"Where there are two Acts on the same subject, the rule is to give effect to both, if possible, but, if the two are repugnant in any of their provisions, the latter Act, without any repealing clauses, operates to the extent of the repugnancy as a repeal of the first; and, even where two Acts are not in express terms repugnant, yet, if the latter Act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the first Act, it will operate as a repeal of that Act.

"The rules of construction governing Constitutional
Amendments are the same as the rules governing
the construction of statutes—*Bailey* v. *Abington,*
201 Ark. 1072, 148 S. W. 2d. 176. It is a rule of uni-
versal application that the Constitution must be
considered as a whole, and that, to get at the mean-
ing of any part of it, we must read it in the light of
other provisions relating to the same subject. *Ches-
shir* v. *Copeland,* 182 Ark. 425, 32 S. W. 2d. 301. The
Constitution is to be construed according to the sense
of the terms used and the intention of its authors.
*Rankin* v. *Jones,* 224 Ark. 1001, 278 S. W. 2d. 646.

"Upon applying these applicable rules to determine
whether the early Constitutional provisions have
been repealed, considering all of the Constitutional
provisions and Amendments as a whole, it is clear,
concerning expense entitlements of the Speaker of
the House, that Paragraph 3 of the Constitutional
Amendment 15 repealed Constitutional Amendment
5, except the beginning date of terms of Members of
the General Assembly, which was repealed by Sec-
tion 6 of the Constitutional Amendment 23; that
Section 3 of Constitutional Amendment 37 repealed
Paragraph 3 of Constitutional Amendment 15; and
that Constitutional Amendment 48 repealed Section
3 of Constitutional Amendment 37. Constitutional
Amendment 48 is full and complete and covers the
pertinent subject matter of Constitutional Amend-
ment 5, Paragraph 3 of Constitutional Amendment
15, and Section 3 of Constitutional Amendment 37.
It embraces new provisions, plainly showing that it
was intended as a substitute for the former perti-
nent Constitutional Amendments. There were three
Constitutional Amendments covering the subject
matter of Constitutional Amendment 5 from 1913
until the adoption of Constitutional Amendment 48
in 1958—a period of 45 years—and had there been
a desire to continue the pertinent prohibition con-
tained in Constitutional Amendment 5, same would

have been included in these Constitutional Amendments.''

The first sentence of Amendment 5 is the controlling part of that amendment, and is as follows:

''Each member of the General Assembly shall receive six dollars per day for his services during the *first* sixty days of any regular session of the General Assembly, and if any regular session shall be extended, such member shall serve without further per diem.'' (emphasis supplied)

This amendment clearly recognizes the *first* sixty days of a regular session of the General Assembly to be no different from any additional days of a regular session, but only provides per diem pay for the members of the General Assembly for the first sixty days of the regular session and no longer. There is no argument but that Amendment 48 repealed the *first part* of this compound sentence in Amendment No. 5, and we are of the opinion that it repealed the second part also.

Now as to the second point designated by appellants in their brief:

Sections 5 and 17 are the only sections of Article 5 of the Constitution providing for the meetings of the General Assembly. Section 5 of Article 5 only provides for the time of meeting of the General Assembly every two years at the seat of government, and Section 17 limits these biennial sessions to sixty days in duration, unless extended by a vote of two-thirds of the members elected to each House of said General Assembly.

Section 5 of Article 5 refers to ''meeting'' of the General Assembly, and Section 17 refers to such meeting as the ''regular biennial session.'' By a vote of two-thirds of the members elected to each House of said General Assembly, the regular biennial session does not

stop and another session begin. But rather the regular biennial session under Section 17 simply fails to continue on for more than sixty days as a meeting of the General Assembly unless two-thirds of the members elected to each House of said General Assembly have voted to continue it.

There is only one kind of session of the General Assembly provided for under "Legislative Department" in Article 5 of the Constitution, and that is "the regular biennial session."

The only other kind of session of the General Assembly is provided for under the "Executive Department" in Article 6 of the Constitution. Section 19 of Article 6 authorizes the Governor to convene the General Assembly "on extraordinary occasions" under strict limitations as to matters to be acted on and the time and manner of remaining in session after the business set forth in the proclamation shall have been disposed of, as set out in Section 19.

Thus we now have, and have always had, only two types of sessions of the General Assembly in Arkansas— the regular biennial sessions, which have come to be known as "regular session," and sessions in which the Governor, by proclamation, convenes the General Assembly on extraordinary occasions, which have come to be known as "special sessions."

We are concerned in this case with the *regular* session of the General Assembly for 1967.

The regular biennial session of the present 1967 General Assembly could not exceed sixty days in duration, unless extended by a vote of two-thirds of the members elected to each House of said General Assembly. Two-thirds of the members elected to each house of said General Assembly have so voted, so now the regular biennial session of the present 1967 General Assembly is not limited to sixty days.

Having already held that Amendment No. 5 has been repealed by subsequent amendments, including Amendment No. 48, we now reach the question of whether or not the members of the General Assembly can legally draw per diem pay of $20.00 per day under authority of Amendment No. 48 for the period of time the General Assembly may be in session in excess of sixty days.

The Chancellor held that Amendment No. 5 was repealed by Amendment No. 48, and that Act 85 of the Acts of the 1967 General Assembly is constitutional and valid. We agree with the Chancellor on both points.

As already pointed out, we have concluded that there are only two classifications for legislative sessions in Arkansas—Regular and Special. We are not concerned here with a special session, and there is no doubt that a regular session may exceed sixty days by a vote of two-thirds of the members elected to each House of the General Assembly.

The per diem provision of Amendment No. 5 was actually repealed by paragraph 3 of Amendment No. 15, and Amendment No. 37 as well as Amendment No. 48.

Amendment No. 48 is the last expression of the people on the point here involved, and in addition to the annual salary to be paid in equal monthly installments "the members of the General Assembly shall receive Twenty ($20.00) Dollars per day for each day the General Assembly is in regular session." This amendment also provides for the payment of Six ($6.00) Dollars per day, in addition to the annual salary, for each day the members of the General Assembly are required to attend special sessions. Amendment No. 48 makes no distinction in the amount of per diem pay for the first sixty days of a regular session and any additional days of a regular session.

Consequently, under Amendment No. 48, the mem-

bers of the General Assembly are entitled to the same per diem pay of $20.00 per day for a regular session regardless of whether it is of sixty days, or more than sixty days duration.

The appellants have pointed out in their brief an interesting bit of legislative history concerning the extended session in 1911 as bringing about the adoption of Amendment No. 5 limiting the pay for the members of the General Assembly to sixty days. We can only surmise that whatever confidence of the people the General Assembly may have lost in 1911, was fully restored by 1958 when Amendment No. 48 was adopted.

That portion of the Chancellor's decree limiting the right of pay to specific legislative days when the members are in actual attendance, and denying the right of pay during "any extension under the guise of a recess during which time the members do not assemble and attend during the extended part of the regular session," was not presented by the pleadings in this case and is not the question before this court on appeal.

The decree of the Chancery Court is modified to that extent, and as modified, is hereby affirmed.

Affirmed.