The Honorable Shane Broadway State Senator 201 Southeast Second Street Bryant, AR 72022-4025
Dear Senator Broadway:
I am writing in response to your request for my opinion concerning Amendment 78 to the Arkansas Constitution. You state that the City of Benton is issuing $3,000,000 in Amendment 78 notes to finance several street projects, and you ask:
Is it legal for the City of Benton to pay the interest from the regular city Street Fund for this Amendment 78 street improvement financing?
In presenting this question, you note that Amendment 78 provides that payments of principal and interest can be made from "road fund revenues." Ark. Const. amend. 78, § 2(a)(2). You report that the city's legal counsel is unsure whether "street fund revenues" are the same as "road fund revenues."[1]
RESPONSE
You have not specifically identified the source of the "street fund revenues" at issue. Assuming, however, that by the term "Street Fund," you mean a fund that is comprised primarily of state aid in the form of highway revenues, then in my opinion the answer to your question is in all likelihood "no." Although no court has addressed the issue, it is my opinion that the term "road fund revenues" in Amendment 78 is properly interpreted to refer only to revenues derived from the county road tax levied pursuant to Ark. Const. amend. 61.
Amendment 78 was submitted to the voters by joint resolution of the General Assembly pursuant to Ark. Const. art. 19, § 22, and approved by the voters on November 7, 2000. See Ark. Const. amend. 78 (Repl. 2004) (Publisher's Notes). It went into effect on January 1, 2001. Ark. Const. amend. 78, § 4. In addition to authorizing the General Assembly to establish a procedure for tax increment financing for redevelopment districts, id. at § 1, the amendment established the option of short-term financing for municipal governments, id. at § 2, thereby amending the debt limitations under Ark. Const. art. 12, § 4 and art. 16, § 1.[2]
Your question pertains to the short-term financing option. The amendment provides in relevant part as follows in authorizing cities and counties to incur interest-bearing indebtedness that will mature in 5 years or fewer:
For the purpose of acquiring, constructing, installing or renting real property or tangible personal property having an expected useful life of more than one (1) year, municipalities and counties may incur short-term financing obligations maturing over a period of, or having a term, not to exceed five (5) years.
Ark. Const. amend. 78, § 2(a).[3]
Your question focuses specifically on the following language of Section 2(a)(2) dealing with the payment of principal and interest on debt incurred pursuant to the amendment:
The total annual principal and interest payments in each fiscal year on all outstanding obligations of a municipality or a county pursuant to this section shall be charged against and paid from the general revenues for such fiscal year, which may include road fund revenues. . . .
Id. at 2(a)(2) (emphasis added).
The term "road fund revenues" is undefined. Nor is it defined in the Local Government Short-Term Financing Obligations Act of 2001, A.C.A. §14-78-101 — 110 (Supp. 2005), enacted subsequent to the adoption of Amendment 78.[4] The standards for determining the meaning of "road fund revenues" as used in Amendment 78 are, however, well-established. Because the answer to your question turns on application of the standards for construction of constitutional amendments, it will be helpful to initially review these standards.
Constitutional provisions must receive a reasonable construction, the purpose being to ascertain the meaning of the framers, and the intention of the electors in adopting the provision. Ragsdale v. Hargraves,198 Ark. 614, 129 S.W.2d 967 (1939). See also Faubus v. Kinney,239 Ark. 443, 389 S.W.2d 887 (1965). It is also a rule of "universal application" that the constitution and its amendments must be read and construed together as a whole, with similar parts considered in pari material. Berry v. Gordon, 237 Ark. 547, 554, 376 S.W.2d 279 (1964), citing Chesshir v. Copeland, 182 Ark. 425, 32 S.W.2d 301 (1930). An amendment becomes part of the constitution upon its adoption and "fits into that organic body. . ." Priest v. Mack, 194 Ark. 788, 790,109 S.W.2d 665 (1937). The meaning of the framers must be gathered from the language used. Ward School Bus Mfg. v. Fowler, 261 Ark. 100, 109,547 S.W.2d 394 (1977) (stating that "[t]he purpose of [an] amendment must be apparent on its face and gathered only from its terms[,]" citing Rankin v. Jones, 224 Ark. 1001, 278 S.W.2d 646 (1955)). The courts cannot read words into a constitutional amendment which "substantially add to, or take from, it, as it is framed." Ward, supra, 261 Ark. at 108, citing Hodges v. Dawdy, 104 Ark. 583, 149 S.W. 656. It is to be presumed that language has been employed with sufficient precision to convey the intent of the people in adopting a constitutional amendment. Carter v. Cain,179 Ark. 79, 14 S.W.2d 250 (1929). The words used, unless they are technical, are to be understood in their usual and ordinary sense. State v. New York Life Ins. Co., 119 Ark. 314, 173 S.W. 1099 (1915). Effect should be given to the purpose indicated by a fair interpretation of the language, and the intent may be shown by implications as well as by express provisions. Bailey v. Abington, 201 Ark. 1072, 148 S.W.2d 176
(1941). See also Wells v. Riviere, 269 Ark. 156, 165, 599 S.W.2d 375
(1980), citing Rankin v. Jones, 224 Ark. 1001, 278 S.W.2d 646 (1955).
The Arkansas Supreme Court has also observed that in interpreting a constitutional amendment, it may be helpful to determine what changes the constitutional amendment was intended to make and the history of the times and conditions existing at the time of adoption. State v. Oldner,361 Ark. 316, 79 S.W.3d 831 (2005); Brewer v. Fergus, 348 Ark. 577, 583,79 S.W.3d 831 (2002); Bryant v. English, 311 Ark. 187, 843 S.W.2d 308
(1992). Finally, the court has stated that "[i]t is the duty of the Judicial Department to interpret the Constitution." Parkin Prtg. 
Stat. co. v. Ark. Prtg. Litho. Co., 234 Ark. 697, 706, 354 S.W.2d 560
(1962). See also Lake View School District No. 25 v. Huckabee, 351 Ark. 31,55, 91 S.W.3d 472 (2002) (quoting Rose v. Council for Better Education, Inc., 790 S.W.2d 186, 208-10 (Ky. 1989) to the effect that: "The judiciary has the ultimate power, and the duty, to apply, interpret, define, and construe all words, phrases, sentences and sections of the . . . Constitution").
Turning then to Amendment 78 and applying these principles, I conclude that the term "road fund revenues" reasonably has reference to the "county road tax" authorized under Ark. Const. amend. 61. Clearly, "road fund revenues" has no common meaning, but instead must be viewed as a technical term and, following the above principles, read in the light of other constitutional provisions respecting municipal revenues. In this regard, Amendment 61 states:
County quorum courts may annually levy a county road tax not to exceed three (3) mills on the dollar on all taxable real and personal property within their respective counties. Revenues derived from the county road tax shall be used for the sole purpose of constructing and repairing public roads and bridges within the county wherein levied. The authority granted by this amendment shall be in addition to all other taxing authority of the county quorum courts.
Ark. Const. amend. 61 (Repl. 2004).
Amendment 61 was approved at the general election in 1982. Id. (Publisher's Notes). However, the counties' constitutional authority to levy a road tax dates back to at least 1899, when the voters adopted a constitutional amendment authorizing the county court to levy a road tax up to three mills upon voter approval. See Sanderson v. Texarkana,103 Ark. 529, 534, 146 S.W. 105 (1912). That amendment was superseded in 1915 by Amendment 3, which was submitted to the voters by Senate Joint Resolution 1 of that year. See Acts 1915 at 1491-92. Amendment 3 was repealed by Amendment 61. See Ark. Const. amend. 61, § 2.
The county road tax has therefore long been a part of the Arkansas Constitution. Additionally, and of particular significance to your question concerning city street improvements financed by Amendment 78 notes, cities historically have received a portion of the road tax revenues. See A.C.A. § 26-79-104 (Repl. 1997) (codification ofAct 153 of 1937, requiring the county court to apportion one-half of the county road tax to cities except where otherwise provided by special act). See also Sanderson, supra, 103 Ark. at 535 (noting that "[t]he streets of the city are public roads, within the county. . ." and that "[i]n the absence of any constitutional inhibition, the Legislature has full power. . . to apportion said road tax between the county and the municipality. . .").
According to the principles reviewed above, this history is an appropriate indicator of the framers' intent when questions of interpretation arise. Amendment 78 became a part of the whole constitution for the purpose of uniform construction. See generally Parkin, supra. While Amendment 78 does not refer explicitly to the "county road tax," Amendment 61 is the only other constitutional provision concerning revenues dedicated to roads. In my opinion, therefore, Amendment 78 is reasonably construed to authorize a pledge of county road tax revenues, whether by a county or a city, pursuant to the provisions of the amendment.
With regard, however, to your specific question concerning "the regular city Street Fund," to the extent this refers to state highway turnback revenues, I do not believe such revenues are encompassed within the term "road fund revenues" under Amendment 78. State highway revenues are made available to cities and counties by the Arkansas Highway Revenue Distribution Law, codified at A.C.A. §§ 27-70-201 — 208 (Repl. 1994 and Supp. 2005). In the case of cities, these revenues are paid over by the state treasurer to the city treasurers of the first and second class and incorporated towns for credit to the "street fund." A.C.A. §27-70-207(b)(1)(A) (Supp. 2005) (emphasis added).[5] A city's "street fund" may also include federal revenue-sharing moneys that are apportioned from the State Aid Street Account of State Highway and Transportation Department Fund, see A.C.A. §§ 27-72-407 and — 408 (Repl. 2004), as well as surplus state-aid funds received from special improvement districts. See A.C.A. § 14-89-1301 (Repl. 1998). These special highway revenues are distributed to cities and counties monthly pursuant to the Revenue Stabilization Law, see A.C.A. §§ 19-5-601 and — 602, and are intended to supplement funds provided by the counties and cities for a state system of roads and streets pursuant to the policies of the State Highway and Transportation Department, and subject to the supervision of the state aid engineer. See A.C.A. §§ 27-72-301 et seq. (aid to counties for a "state aid road system") and 27-72-401 et seq. (aid to cities for a "state aid street system.")
I do not interpret Amendment 78 to have included these state aid highway revenues when it authorized a pledge of "road fund revenues" for the fiscal year to pay short-term debt incurred by a county or city. The amendment plainly requires payment of principal and interest "in each fiscal year" from "revenues for such fiscal year." When viewed in this light, the term "road fund revenues" is reasonably construed to reference county and city revenues for the fiscal year; whereas the state highway turnback arises from state revenues that are apportioned to counties and cities. The turnback is not a county fund. Taylor v. J. A. Riggs Tractor Company, 197 Ark. 383, 384, 122 S.W.2d 608 (1938). It reasonably follows that it is not a city fund. Instead, it has been described as "a gratuity provided by the State for the benefit of its subdivisions." Stanfield v. Kincannon, 185 Ark. 120, 124, 46 S.W.2d 22 (1932) (further noting the previous holding in Anderson v. American Bank, 178 Ark. 652, 11 S.W.2d 444
(1928) that Ark. Const. art. 12, § 4, prohibiting counties and cities from incurring indebtedness in excess of revenues for the fiscal year, has no application to the fund in the county treasury received from the state as turnback.)
In conclusion, therefore, because the state highway fund is not a county or a city fund, I believe a court faced with the issue would likely determine that Amendment 78 does not refer to these revenues when it authorizes counties and cities to incur short-term debt and pay principal and interest on such debt from "road fund revenues." Accordingly, assuming that by the city "Street Fund," you mean a fund arising from state highway revenues, it is my opinion that the City of Benton may not constitutionally pay the interest on Amendment 78 street improvement financing from such revenues.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] You further report that "[t]he city has been advised by legal counsel that the principal portion of the [Amendment 78 notes] may be paid from a special 1/4 % sales tax approved by the voters in 2004 specifically for street improvements." Although your request for my opinion pertains only to the interest portion of the debt, I must nevertheless note my uncertainty regarding this advice. Amendment 78 broadens the constitutionally permissible range of financing options for making public improvements. See Op. Att'y Gen. Nos. 2001-156 (discussing the various ways in which a municipality might finance capital improvements). In so doing, the amendment declares that principal and interest owed in any given year on an obligation incurred pursuant to the amendment "shall be charged against and paid from the general revenues for such fiscal year, which may include road fund revenues." Ark. Const. amend. 78, § 2(a)(2) (emphasis added). Given that the projects to be financed by the city in this instance are street projects, the city's use of "road fund revenues" (the precise meaning of which is discussed further herein) to pay principal, as well as interest, on the Amendment 78 notes would appear to fall squarely within the amendment. With the exception of "road fund revenues," however, revenues that are in the nature of special revenues arguably are not included as a source of financing debt incurred pursuant to Amendment 78. Such debt must be paid from "general revenues," according to the amendment's express language. I have found no controlling definition of "general revenues," and therefore cannot be entirely certain as to the meaning of this term. Read literally, however, it would seem to exclude special revenues. Cf. A.C.A. § 26-75-606(c)(4) (Supp. 2005) (declaring that the subsection of the Code addressing the use of the hotel and restaurant tax "shall be reasonably construed so as to provide funds for promoting and encouraging tourism and conventions while not allowing such special revenues to be utilized for expenditures that are normally paid from general revenues of the city.") I have no additional information respecting the 1/4 % sales tax that you reference, other than your statement that it was approved "specifically for street improvements." This suggests that it is a specially designated sales tax, the proceeds of which may constitute special, as opposed to general, revenues. While it might seem logical that such revenues should be available to pay the principal on Amendment 78 notes issued to finance improvements falling within the sales tax's designated purpose, I must note that this is arguably contrary to the plain language of Amendment 78.
[2] Article 12, § 4 prohibits any municipal corporation, i.e., any county, city or town, from entering into any contract or authorizing any indebtedness "in excess of the revenue from all sources for the current fiscal year." Article 16, § 1 prohibits municipalities from issuing "any interest-bearing evidences of indebtednes. . ."
[3] The amendment defines "short-term financing obligation" as "a debt, a note, an installment purchase agreement, a lease, a lease-purchase contract, or any other similar agreement, whether secured or unsecured; provided, that the obligation shall mature over a period of, or have a term, not to exceed five (5) years[.] Ark. Const. amend. 78, § 2(b)(1).
[4] Although Amendment 78 is self-executing, see § 2(c), the legislature has made various provisions for its implementation in this 2001 act. Subsection 14-78-103(d)(1) states: "The total annual principal and interest payments in each fiscal year on the obligations shall be charged against and paid from the general revenues of the issuer for the fiscal year, including road fund revenues." A.C.A. § 14-78-103(d)(1) (Supp. 2005) (emphasis added). Again, the statute does not define "road funds revenues."
[5] State highway revenues made available to counties are paid over to the county treasurers for credit to the "county highway fund." A.C.A. § 27-70-207(a)(1)(A) (Supp. 2005).