The Honorable Steve Faris State Senator 29476 Highway 67 Malvern, AR 72104-6833
Dear Senator Faris:
I am writing in response to your request for my response to the following question:
 Are the employment restrictions imposed by A.C.A. § 21-1-402 in violation of any state or federal constitutional provision?
You characterize the referenced restrictions as follows:
 Arkansas Code Annotated 21-1-402 provides that no person elected to a constitutional office (as defined in 21-1-401), after being elected to the constitutional office and during the term for which elected, may enter into employment with: any state agency, any public school district of this state in a non-certified position, any vocational education school funded by this state, or any education service cooperative.
RESPONSE
In my opinion, the answer to your question is, in all likelihood, "no."
Section 21-1-402 of the Arkansas Code (Supp. 2007), which was enacted pursuant to Acts 1999, No. 34, provides in pertinent part:
 (a)(1) Subject to any restriction or condition prescribed by the Arkansas Constitution and unless the person resigns prior to entering *Page 2 
into the employment, no person elected to a constitutional office,[1] after being elected to the constitutional office and during the term for which elected, may enter into employment with:
 (A) Any state agency;
 (B) Any public school district of this state in a noncertified position;
 (C) Any vocational education school funded by the state; or
 (D) Any education service cooperative.
 (2) Subject to any restriction or condition prescribed by the Arkansas Constitution, any constitutional officer who was employed by a state agency prior to being elected a constitutional officer may continue the employment, but the employment shall not thereafter be reclassified unless it is the result of a general reclassification affecting all positions of the class and grade equally, nor shall the constitutional officer receive any pay increase for that employment other than the cost-of-living increases authorized by the General Assembly without the prior approval of the Joint Budget Committee during a legislative session, the Legislative Council between legislative sessions, and the Governor.
 * * * (e) A former member of the General Assembly and his or her spouse shall not be eligible to be employed by any state agency within twenty-four (24) months after the member leaves office in any job or position that: *Page 3 
 (1) Was newly created by legislative action within the twenty-four (24) months prior to the member's leaving office; or
 (2) Had a maximum salary level increase of more than fifteen percent (15%) authorized by legislative action within the twenty-four (24) months prior to the member's leaving office.
This statute imposes three restrictions: first, once elected, a constitutional officer may not during his term enter into any of the recited categories of governmental or quasi-governmental employment unless he first resigns; secondly, if the governmental officer was serving in one of the recited employments at the time of his election, he may continue the employment, subject to the conditions that he not be reclassified unless all employees in his current classification will be likewise reclassified and he not receive any salary increase other than legislatively approved cost-of-living adjustments; and thirdly, subject to the conditions set forth in subsection (e) of the statute, a legislator may not accept certain public employments within two years of leaving the General Assembly. See Ark. Op. Att'y Gen. No. 99-063
(generally discussing the scope of Act 34 of 1999).
In analyzing this statute, I am guided by the fact that the Arkansas Constitution is not a grant, but a limitation of powers; and the legislature may rightfully exercise the power of the people, subject only to restrictions and limitations imposed by the Arkansas or United States Constitution. Wells v. Purcell, 267 Ark. 456, 592 S.W.2d 100
(1979). While the United States Constitution is a grant of powers, beyond the scope of which the federal government has no power to act, Arkansas's Constitution is a limitation of power. Its provisions list what government cannot do, and in the absence of such limiting language, the state government may act. State v. Ashley, 1 Ark. 513, 538 (1839);St. Louis, I.M. S. Rwy Co. v. State, 99 Ark. 1, 14 (1911); Baratti v.Koser Gin Co., 206 Ark. 813, 817 (1944); Smart v. Gates, 234 Ark. 858,860 (1961). The initial question, then, is whether any provision of the Arkansas Constitution would preclude the legislature from restricting the employment options of a constitutional officer in the manner reflected in A.C.A. § 21-1-402. With respect to federal law, the question is whether the referenced restrictions are in any way at odds with any provision of the U.S. Constitution.
In my opinion, the referenced restrictions in all likelihood do not offend either the U.S. or the Arkansas Constitution. At issue is whether the constitutional requirements for holding the various constitutional offices necessarily preclude the *Page 4 
legislature from restricting those officers from engaging in certain activities outside the scope of those offices. Stated differently, the question is whether any such legislative restrictions should be considered requirements for office-holding not authorized by the constitution.
One school of interpretation holds that for the legislature to restrict the activities of individuals who are otherwise qualified to hold office would in effect impose upon them additional qualifications not imposed by the constitution. Specifically with respect to legislators, this position is summarized in 67 Corpus Juris Secundum,Officers, at § 41 (2002) as follows:
 A constitutional provision prohibiting the holding of another office by a legislator does not bar the legislator from public employment, and a statute which bars employment of such persons is invalid as adding a qualification for the office which is not prescribed by the constitution.
(Footnotes omitted.) However, the commentator qualified this conclusion as follows:
 However, a provision prohibiting the holding by a legislator of any office or position of profit has been held to prohibit the holding by legislators of any salaried nontemporary employment under the state, and a statute exempting specified positions from its scope is invalid.
Id. (footnotes omitted).
The authority of the legislature to restrict the activities of individuals properly holding office was addressed as follows inReilly v. Ozzard, 166 A.2d 360, 365 (N.J. 1960):
 A constitution does not resolve all policy problems. Rather it establishes the framework of government with such specific restraints as are thought to be of eternal value and hence worthy of immunity from passing differences of opinion. If the sense of the situation suggests that an affirmative specification was meant to be exclusive, as, for example, a statement of the qualifications for office, no more may be added. . . . *Page 5 
 Where, as here, the constitutional provision is prohibitory in nature, it surely can not mechanically be inferred that what was not prohibited was thereby affirmatively guaranteed.[2] The decision to prohibit is simply a decision to foreclose a contrary view as to the area dealt with. What is left untouched remains within the jurisdiction of government. Here, the Convention determined, and the people agreed, to bar dual officeholding within the stated terms. They did not thereby ordain that all other officeholding by legislators shall be constitutionally protected. . . . The matter is either frozen by the Constitution or remains subject to law, be it statutory or common.
The upshot of these pronouncements appears to be this: if a constitution expressly bars a duly elected official from engaging in a specified activity, that bar is absolute and cannot be legislatively compromised; however, if a constitution is silent on a particular issue, a legislature may impose reasonable restrictions on the operations of a duly elected constitutional officer.
Specifically with respect to direct constitutional proscriptions against undertaking professional activities outside the scope of one's office, Article 6, § 22 contains the following provision regarding dual office-holding:
 The Treasurer of State, Secretary of State, Auditor of State, and Attorney-General shall perform such duties as may be prescribed by law; they shall not hold any other office or commission, civil or military, in this State or under any State, or the United States, or any other power, at one and the same time. . . .[3]
I do not read this proscription as in itself prohibiting the employments referenced in your request, since a mere employment does not appear to involve the exercise *Page 6 
of an "office or commission . . . or any other power" in the sense contemplated in this provision. Cf. Haynes v. Riales, 226 Ark. 370,290 S.W.2d 7 (1956). This conclusion applies equally to the provisions of Article 5, § 10, which provides:
 No Senator or Representative shall, during the term for which he shall have been elected, be appointed or elected to any civil office under this State.
This provision likewise has no implications for the possible public employment of a sitting legislator. Again, as noted above, I believe the legislature might impose reasonable restrictions upon such employment without impermissibly mandating qualifications for office in addition to those required by the constitution.
The only other basis for challenge against the statutory proscription under either the U.S. or Arkansas Constitution might be under their equal protection clauses, which are set forth in U.S. Const. amend. 14
and Ark. Const. art. 2, §§ 2 and 3. The equal protection doctrine prohibits certain types of "classifications" that result in the disparate treatment of those who are similarly situated. However, classifications in and of themselves do not violate the equal protection doctrine. In order to establish an equal protection violation arising out of a classification that does not affect a suspect class or a fundamental right, it is necessary to show that the disparity is arbitrary — that is, that the disparity has no conceivable rational basis or rational relation to a legitimate end. Vacco v. Quill,521 U.S. 793 (1997); Romer v. Evans, 517 U.S. 620, 631 (1996); Clements v.Fashing, 457 U.S. 957 (1982); Craft v. City of Fort Smith, 335 Ark. 417,984 S.W.2d 22 (1998); Medlock v. Leathers, 311 Ark. 175, 842 S.W.2d 428
(1992), reh. denied, 1993; McCambridge v. City of Little Rock,298 Ark. 219, 766 S.W.2d 909 (1989); Streight v. Ragland, 280 Ark. 206,655 S.W.2d 459 (1983); City of Piggott v. Woodard, 261 Ark. 406,549 S.W.2d 278 (1977).
In reviewing the constitutionality of a classification that does not affect a suspect class or a fundamental right, the courts must not only presume the constitutionality of the challenged classification, but they must also uphold the classification even without requiring a showing of an actual rational basis, so long as any conceivable rational basis for the scheme can be adduced — even a hypothetical one. Williamson v. LeeOptical Co., 348 U.S. 483 (1955); Ester v. National Home Ctrs.,Inc., 335 Ark. 356, 981 S.W.2d 91(1998); Reed v. Glover, 319 Ark. 16,889 S.W.2d 729 (1994); Arkansas Hospital Assoc. v. State Board ofPharmacy, 297 Ark. 454, 763 S.W.2d 73 (1989). *Page 7 
The classification in the present case is between, on the one hand, constitutional officers, who, subject to the qualifications set forth above, are forbidden to engage in the employments recited in the statute, and, on the other hand, all other citizens, who are not thus restricted. In my opinion, precluding only constitutional officers from engaging in such dual employment would clearly pass a rational-basis analysis. The legislature may well have decided to impose these restriction upon constitutional officers in order to ensure that they would not face conflicts of interest in performing official duties that might have consequences for the entities listed in A.C.A. §21-1-402(a)(1).[4] The legislature may further have wished to avoid the real possibility that a constitutional officer might be accorded special treatment in his public employment because of his official position. Finally, it may have wished to avoid the possibility that a relatively low-paid, part-time, term-limited constitutional officer would take a highly paid position as a public employee toward the end of his term in order to ensure that his pension benefits would be calculated based upon the high salary he earned in his position as a public employee rather than upon his salary as a constitutional officer.[5] In my opinion, any one of these possible reasons would insulate the statute from an equal-protection challenge. I am further unaware of any constitutional provision, whether state or federal, that would bar regulation of the sort at issue in your request.
Finally, I should note that in certain instances, a finder of fact might conclude that the statute at issue is directly consistent with the Arkansas Constitution. A proscription against employment of the sort set forth in the statute might in some *Page 8 
cases be deemed an exercise of the "separation of powers" doctrine, which prohibits an individual located in one branch of government from exercising authority in another branch. Ark. Const. art. 4, § 2.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Subsection 21-1-401(1) of the Arkansas Code (Repl. 2004) defines the term "constitutional officer" as follows:
 "Constitutional officer" means Governor, Lieutenant Governor, Secretary of State, Treasurer of State, Attorney General, Commissioner of State Lands, Auditor of State, member of the Arkansas House of Representatives, and member of the Arkansas Senate[.]
[2] At issue in Reilly was whether a state senator might be prohibited under the common law from holding the position of town attorney. Notwithstanding the fact that constitution did not bar such dual service in setting forth the qualifications to serve as a legislator, the court held that the common-law doctrine of incompatibility applied and concluded that the dual service was permissible under that doctrine.Id. at 367.
[3] Although this section does not mention the commissioner of public lands, who was added to the list of executive officers by what is now Amendment 56, § 1, see also Amendment 63, the court has held that the provisions of Article 6, § 3 apply to the commissioner. Rankin v.Jones, 224 Ark. 1001, 278 S.W.2d 646 (1955).
[4] Indeed, this intent appears to be reflected in the emergency clause to Act 34 of 1999, which provides in pertinent part:
 It is hereby found and determined by the General Assembly that there is an immediate need to establish restrictions and procedures regarding constitutional officers becoming employees of the state or entering into grants, contracts or leases with the state; that this act establishes those restrictions and procedures; and that this act should go into effect as soon as possible to help restore the public confidence in state government.
[5] In this regard, my predecessor offered the following in Ark. Op. Att'y Gen. No. 2001-357:
 The public controversy that gave rise to the passage of Act 34 included at least three instances of sitting state legislators accepting state employments without resigning their legislative seats. See, e.g., Biedenharn v. Hogue, 338 Ark. 660, 1 S.W.3d 424 (1999); State ex rel. Bryant v. Thicksten (CV 9712408, Pulaski County Circuit Court, Second Division 1997); and State ex rel. Bryant v. Purdom (CV 9711788, Pulaski County Circuit Court, Sixth Division 1997). *Page 1