The Honorable Stanley Russ State Senator P.O. Box 787 Conway, Arkansas 72032
Dear Senator Russ:
This is in response to your request for an opinion on the interaction of the new school funding formula passed in 1995 (see Acts 916 and 917 of 1995 codified respectively at A.C.A. § 6-20-312 (Adv. Code Serv. 1996-97) and A.C.A. §§ 6-20-301 — 321 (Supp. 1995)), and Amendment 59 to the Arkansas Constitution. You note that the new school funding formula enacted by the legislature in 1995 through Acts 916 and 917 provides that each school district in the State of Arkansas must levy 25 mills for maintenance and operation, and if the school district fails to levy 25 mills for maintenance and operation, the school district electors are subject to a ten percent state income tax surcharge.[1] You also note, however, that Amendment 59 to the Arkansas Constitution provides that a county wide reassessment or reappraisal of property may, under certain circumstances, lead to the decreasing or "rolling back" of property millage rates in a school district. You have two questions concerning the interaction of Acts 916 and 917 and Amendment 59. You also have two questions regarding the interaction of Amendment 59 with "Amendment 1" to the Arkansas Constitution, recently adopted by the voters of the state at the November 1996 general election. Amendment 1 automatically levies a uniform minimum maintenance and operation millage of 25 mills in each district and requires the net revenue from 25 mills from each school district to be forwarded to the state for redistribution to all districts to ensure an equalization of funding across the state. The four questions you have posed concerning these matters are as follows:
 1) If a school district had levied 25 mills for maintenance and operation after the passage of Act 917 of 1995 and, due to a roll-back required by Amendment 59, the maintenance and operation mills fall below 25 mills, then is the school out of compliance with Act 917? Is the school district immediately subject to the income tax surcharge and other enforcement provisions of the Act?
 2) In the event that a school district is out of compliance and not immediately subject to the income tax surcharge, would a school district be out of compliance with Act 917 if it did not raise its maintenance and operation millage in the first election that occurred after the millage roll-back?
 3) What happens if a millage roll-back occurs and the millage levied is reduced? In such instance, would the state receive 25 mills or a reduced millage that equals the funds that the original 25 mills would have generated? If so, how long would such a reduction last?
 4) What power would the legislature have to pass legislation to clarify how proposed Amendment 1 and Amendment 59 integrate together to achieve a fair and workable method for the state to collect these funds?
I must first note that questions involving the interpretation of Amendment 59 to the Arkansas Constitution are always complex. I have attempted below to address your questions as fully and accurately as possible. Because of the complexity of the issues raised, however, and the possibility of varying results based upon the specific facts surrounding a particular school district, judicial resolution of the questions posed will ultimately be necessary.
In my opinion, the answer to your first question depends upon to what taxable year your question refers. If the rollback was implemented and applied to the 1995 taxable year to reduce a minimum 25 mill levy approved by the voters at the September 1995 annual school election, the residents of the district may indeed be subject to the surcharge on their 1996 income taxes. If the rollback was first implemented for the 1996 tax year, they are not subject to the surcharge in my opinion.
It is necessary initially to clarify some terminology used in your first question. You state that the voters of a school district "levied" 25 mills after the passage of Acts 916 and 917. I assume you are referring to the September 1995 annual school election at which the voters of the district voted to approve that rate of tax. The actual "levy" of the taxes is not accomplished until the regular November meeting of the quorum court. See A.C.A. § 14-14-904(b). The distinction is important because even though the voters of a school district vote to approve 25 mills, that rate of tax may not be the actual rate "levied" if a rollback must be implemented for that tax year. The roll-back computation must be completed by the third Monday in November of the taxable year. See
A.C.A. § 26-26-404 (Repl. 1992).
It is my opinion, in response to your first question, if you are referring to the fact that the voters of the district voted, in September 1995, to approve a 25 mill rate, but a rollback implemented for that same tax year (1995) reduced the rate collectible for 1995 taxes, that the voters of that district are subject to the income tax surcharge which would be applied to their 1996 state income tax liability. In that case, the district has "failed to levy" the minimum millage as required by Act 916,[2] although the voters of the district did vote to approve that rate. Although this result may seem unfair to the voters of the district, who did indeed vote to approve the required amount, I am constrained to conclude, under Act 916, that if the minimum amount was not actually "levied" the income tax surcharge provided by that Act does attach. This perceived inequity, however, might be the subject of clarifying legislation. See response to Question 4, infra.
A different conclusion obtains with regard to the income tax surcharge, however, if your question refers to a situation in which the voters of the school district voted, in September 1995, to approve a 25 mill rate, and that rate was actually "levied" by the quorum court for the 1995 tax year (with no rollback), and then that same rate was approved at the 1996 September annual school election, but was then adjusted by a rollback for the 1996 taxable year. If the deficient rolled back rate first occurs for the 1996 tax year, it is my opinion, as discussed more fully below, that newly adopted Amendment 1 to the Arkansas Constitution is effective as to that taxable year, and automatically requires the levy of a 25 mill minimum, despite the fact that the voters failed to approve that rate, and despite the requirements of Amendment 59. In short, for tax years 1996 and thereafter, Amendment 1 will not allow a district to be out of compliance with the 25 mill minimum, and thus its residents will not be subjected to any income tax surcharge on account of a deficient millage rate for those tax years.
Thus, in answer to your first question, if the rollback was implemented as to 1995 taxes to reduce the school levy below 25 mills for the 1995 tax year, the residents of the school district, absent clarifying legislation, may indeed be subject to the income tax surcharge on their 1996 tax liability. If the rollback, however, was first implemented as to 1996 taxes, it is my opinion that Amendment 1 will require a 25 mill levy despite the rollback provisions, and the district will not be out of compliance for the 1996 tax year.
From what has been said above, it follows that the answer to your second question is technically, "no," a school district will not be out of compliance with Acts 916 and 917 if it fails to raise its maintenance and operation millage to 25 mills in the first election occurring after the millage roll-back (either the 1996 or 1997, school election, depending on to what year your question refers) because the operation of recently adopted Amendment 1 will not allow a district to be out of compliance with Acts 916 or 917 in those years. Even if the voters of the school district fail to raise the millage back to at least 25 mills, the operation of recently enacted Amendment 1 to the Arkansas Constitution will automatically, by operation of law, raise the millage rate to 25 mills for purposes of collecting 1996 taxes due in 1997, and for years subsequent.
Some explanation is necessary. If Act 916 is viewed in a vacuum, it requires the Director of the Department of Education to annually certify to the Director of the Department of Finance and Administration the name of any school district which has failed to levy at least the base millage. Act 916, § 2(a). The levy of the base millage appears to be a continuing annual requirement under Act 916. If a district finds itself with a millage below the base amount, even through no fault of its own (as with the application of Amendment 59), Act 916 requires the district to act, when it has the opportunity, to place itself in compliance with Acts 916 and 917 or face the income tax surcharge. Thus, if the voters of a school district voted to approve the 25 mills in September of 1995 to apply to the 1995 tax year, and then a roll-back reduces that minimum millage for purposes of collecting 1995 taxes, Acts 916 and 917 would appear to require the voters, at the 1996 September election, to increase the millage back to 25 mills, or face an income tax surcharge. The same result would apply if the voters approved the minimum 25 mills at the September 1996 election, and a rollback implemented on 1996 taxes reduced the millage. Act 916 and 917, viewed in a vacuum, would require the voters to increase the millage back to 25 mills in September of 1997 or face the surcharge.
This conclusion, however, and the income tax surcharge itself, are mooted by the adoption of Amendment 1. With the adoption of Amendment 1, which was effective upon adoption and is applicable to taxes "due" in 1997 and thereafter, (meaning 1996 taxes) such a vote is not necessary, as the provisions of Amendment 1 automatically raise the millage in any district with a rate below 25 mills on Amendment 1's effective date to 25 mills.See Amendment 1, § 1(b)(2), and § 4. If the millage rate in the district is automatically raised to 25 mills by virtue of Amendment 1, applying an income tax surcharge to the voters of the district for failure to levy 25 mills for that same year would result in a surplus of revenue in that district, and would not, in my opinion, be consistent with legislative intent. That is, if both Amendment 1 and Act 916 are applied, the millage rate would automatically be 25 mills for the 1996 tax year (by virtue of Amendment 1), and the income tax surcharge under Act 916 (which was adopted to make up the difference between the deficient rate the voters actually levied and 25 mills), if applied, would generate additional revenue to make up a deficiency which in fact did not occur because of the operation of Amendment 1. Additionally, with the adoption of Amendment 1, the formula provided in Act 916 for distributing the income tax surcharge to the deficient districts simply becomes unworkable. See
Acts 916 of 1995, § 4. I cannot conclude that the legislative intent was to levy an income tax surcharge in light of the adoption of Amendment 1 and its automatic 25 mill levy in every district.
It thus appears as a practical matter that the operation of the "income tax surcharge" adopted in Act 916 of 1995 is of a short-lived nature, and would only apply in districts which failed to levy 25 mills at the September 1995 annual school election. Every school district, with the adoption of Amendment 1, will automatically have a minimum millage rate of 25 mills for the purpose of collecting 1996 taxes and in years thereafter (whether the voters approve it or not) and will never be allowed to fall below that minimum again, thus ending the necessity for an "income tax surcharge." This conclusion assumes that the adoption of Amendment 1 will operate to levy a minimum 25 mill base millage in every district in spite of the roll-back requirements of Amendment 59. That issue is discussed below.
Your third question concerns the operation of newly enacted Amendment 1 in light of the provisions of Amendment 59 to the Arkansas Constitution. You have posited a situation in which a millage roll-back occurs and the millage is reduced. You ask whether the state would receive 25 mills or "a reduced millage that equals the funds that the original 25 mills would have generated."
Your third question does not provide any facts as to the timing of the listed events. I assume, from your previous questions, however, that the voters of the school district levied at least a 25 mill tax rate at the annual school election in September, 1995, as required by Acts 916 and 917. I also assume that a reappraisal was completed either in 1995 or 1996. The analysis used in reaching an answer to your question may depend upon when the roll back was implemented. If the reappraisal was completed in 1995 and the roll back applied to the collection of 1995 taxes in 1996, it is my opinion that the adoption of Amendment 1 will automatically increase the previously rolled-back millage rate to 25 mills for the 1996 tax year (absent a higher rate approved by the voters) and will require the school district to remit the net revenues from that 25 mills (when collected in 1997) to the State Treasurer. In this scenario, the rollback provisions of Amendment 59 were first implemented in 1995 to rollback the 1995 millage rate, and the provisions of Amendment 1 were first applied in 1996 to the 1996 year taxes. In this instance, Amendment 59 is given full effect for the 1995 tax year, but the operation of Amendment 1 comes into play for the 1996 tax year.
If, however, you are referring to a situation in which the voters of a district approved a 25 mill levy at the annual school election of 1995 and did not change this rate at the annual school election of 1996 and a reappraisal was completed in 1996 and is slated to first apply to 1996 taxes collected 1997, there appears to be a clash between the provisions of Amendment 1, which operates to automatically impose a minimum 25 mill levy for school maintenance and operation purposes for tax year 1996 and thereafter, and the provisions of Amendment 59, which requires millage rates to be rolled back after a reappraisal. Under these facts, the provisions of Amendment 1 and the rollback provision of Amendment 59 are scheduled to be first imposed at the same time, for the same tax year. Amendment 1 would impose an automatic 25 mill minimum, and Amendment 59 would roll back the 25 mills actually approved by the voters to an amount which furthers the purposes of that amendment. If Amendment 1 is given effect, the roll back provisions of Amendment 59 may not be fully implemented. If, on the other hand, Amendment 59 is given effect, and the millage rolled back, the minimum millage requirement of Amendment 1 will be violated.
It is my opinion that Amendment 1 will take precedence and will require a 25 minimum millage levy despite the provisions of Amendment 59. I base this conclusion on several factors. First, Amendment 1 contains a "general repealer clause," which states that: "[a]ny provision of the Constitution of the State of Arkansas in conflict with this Amendment is repealed in so far as it is in conflict with this Amendment." Amendment 1, § 3. Although, on its face, Amendment 1 does not conflict with Amendment 59, the operation of the two provisions in tandem may lead to a conflict. To the extent of such a conflict, it is my opinion that Amendment 1 supersedes Amendment 59 pursuant to Amendment 1's repealer clause. Second, it has been held that the same rules of construction applicable to statutes apply in the construction of constitutional amendments. See State ex rel. Purcell v. Jones, 242 Ark. 168,412 S.W.2d 284 (1967). One such rule is that if two contrary statutes are in irreconcilable conflict, the latter enactment controls. See, e.g., Kylev. State, 312 Ark. 274, 849 S.W.2d 935 (1993). Amendment 1, of course, is the latter enactment. Finally, however, to the extent your question has reference to a rollback first implemented in the 1996 tax year, Amendment 59 itself, allows, in implementing a rollback, for the "adjustment" of the tax rate for "any lawful tax or millage rate increase or reduction imposed in the manner provided by law for the year for which the tax adjustment or rollback is to be made." Although the effect of this provision would require reference to particular facts surrounding the actual millage rates in a given district, it may be argued that the 25 mill minimum required by Amendment 1 is a "millage rate increase imposed in the manner provided by law" for purposes of this provision, allowing an "adjustment" for the 25 mill minimum.
In my opinion therefore, in response to your third question, the school district must levy and collect at least 25 mills, for tax years 1996 and thereafter and the state will receive the net revenue from 25 mills despite the rollback provisions of Amendment 59. There is in my opinion no authority, as your question suggests, for the state to receive "a reduced millage that equals the funds that the original 25 mills would have generated." I assume from this phraseology that you refer to a millage rate applied to newly reappraised values which would generate the same exact dollar figure which 25 mills based upon the old values would have generated. In my opinion the application of this formula would violate Amendment 1 by allowing the remittance of less than the net income of 25 mills.
In response to your fourth and final question, concerning the authority of the legislature to clarify how these two Amendments interact, it is my opinion that the Arkansas General Assembly possesses all legislative power not denied it by the Arkansas or United States Constitutions. That is, the Arkansas legislature may enact whatever legislation it chooses to clarify the interaction of these two Amendments, unless the legislation conflicts with the provisions of either the Arkansas or United States Constitutions. Hooker v. Parkin, 235 Ark. 218, 357 S.W.2d 534 (1962). In adopting any such legislation the General Assembly must, in my opinion, be mindful of at least two constitutional requirements. Article 16, § 5
of the Arkansas Constitution, as interpreted in Arkansas Public ServiceCommission v. Pulaski County Board of Equalization, 266 Ark. 64,582 S.W.2d 942 (1979), requires property to be assessed at "current market value." The provisions of Amendment 59, adopted after the decision in that case, do not appear to materially alter this requirement. Cf.,however, Arkansas Constitution, art. 16, § 15. In addition, compliance must be had with the 25 mill minimum of Amendment 1 for tax years 1996 and thereafter.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] The surcharge is collected by the State and ultimately distributed back to the districts failing to levy the minimum millage, in such a way as to provide each such school district the equivalent of a 25 mill levy. See Act 916, § 4.
[2] Act 916 of 1995 contains the income tax surcharge. Act 917 of 1995 contains the legislatively enacted new school funding formula and additional penalties for noncompliance. See generally Ops. Att'y Gen.95-307.