Mr. Barry Emigh 1104 7th Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted thirteen similar measures, eleven of which I rejected due to ambiguities in the text of your proposed amendments. See Op. Att'y Gen. Nos. 2002-077, 2002-042, 2002-026, 2002-001, 2001-380, 2001-358, 2001-341, 2001-173, 2001-110, 2001-095 and 2001-074. My office has revised and certified popular names and ballot titles for two similar measures, as evidenced by Op. Att'y Gen. Nos. 2001-129 and 2001-196. You have since made additional changes to your measure and submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AN AMENDMENT AUTHORIZING BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE, THE ORGANIZATION OF A CORPORATION BY BARRY LEE EMIGH TO OPERATE, HIRE PERSONS AND SUBCONTRACT INDEPENDENT CONTRACTOR(S) TO OPERATE FOR PROFIT GAMBLING, EMPOWERING THE GENERAL ASSEMBLY TO OPERATE A LOTTERY AND FOR THE GENERAL ASSEMBLY TO CALL A SPECIAL SESSION
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING THE OPERATION OF BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE; REQUIRING BARRY LEE EMIGH TO ORGANIZE A CORPORATION AS THE INCORPORATOR FOR THE PURPOSE OF OPERATING GAMBLING TO BE ENTITLED THE "DIAMOND STATE CASINOS, LIMITED" WITH THE RIGHT OF BARRY LEE EMIGH FOR ANY REASON TO APPOINT ANOTHER PERSON TO REPLACE HIM AS THE INCORPORATOR; AUTHORIZING THE INCORPORATOR TO APPOINT 6 PERSONS AS CORPORATE BOARD DIRECTORS TO ESTABLISH THE BOARD OF DIRECTORS OF THE "DIAMOND STATE CASINOS, LIMITED"; REQUIRING THE SECRETARY OF STATE TO INCORPORATE THE "DIAMOND STATE CASINOS, LIMITED" UPON FILED APPLICATION WITH THE NAMES OF THOSE APPOINTED CORPORATE BOARD DIRECTORS BY THE INCORPORATOR WHEREIN THE REQUIREMENT OF THE INCORPORATOR IS FULLFILLED [FULFILLED]; PROVIDING EACH SIGNATURE THE SECRETARY OF STATE COUNTS AS VALID TO PLACE THIS AMENDMENT ON THE BALLOT WITH EXCEPTION OF A CANVASSER'S SIGNATURE ON A PETITION AS PETITIONER WITH THEIR SIGNATURE ON THAT PETITION AS CANVASSER SHALL BE COUNTED AS 2 SHARES OF STOCK WITH BARRY LEE EMIGH AS THE AUTHOR AND SPONSOR OF THIS AMENDMENT RECEIVING 1 OF 2 SHARES WITH THE CANVASSER RETAINING THE OTHER SHARE WITH ALL SHARES OF STOCK FILED AS PREFERRED STOCK WITH THE APPROPRIATE STATE AND FEDERAL SECURITIES DEPARTMENT(S) BY THE CORPORATE BOARD OF DIRECTORS OF THE DIAMOND STATE CASINOS, LIMITED"; REQUIRING THE CORPORATE BOARD OF DIRECTORS OF THE "DIAMOND STATE CASINOS, LIMITED" TO ABIDE BY ALL THE LAWS, RULES AND REGULATIONS OF THE STATE NOT PROVIDED FOR DIFFERENTLY WITHIN THE PROVISIONS OF THIS AMENDMENT AND TO FULLFILL [FULFILL] ANY AND ALL OTHER REQUIREMENTS REQUIRED OF ALL OTHER CORPORATIONS INCORPORATED IN THE STATE NOT PROVIDED FOR DIFFERENTLY WITHIN THE PROVISIONS OF THIS AMENDMENT TO INCLUDE PROVIDING THE SECRETARY OF STATE WITH THE "BY LAWS" THAT SHALL GOVERN THE CORPORATION AND FILLED APPLICATION FOR THE REGISTRATION OF PREFERRED STOCK AS PROVIDED TO THE CANVASSERS; REQUIRING THE "DIAMOND STATE CASINOS, LIMITED" AND THOSE PERSONS HIRED AND SUBCONTRACTED AS INDEPENDENT CONTRACTORS TO OPERATE GAMBLING TO PAY ALL STATE AND LOCAL TAXES AS APPLICABLE AND TO OBTAIN AND PAY FOR ANY LICENSES AND PERMITS NOT EXEMPTED WITHIN THE PROVISIONS OF THIS AMENDMENT; EXEMPTING THE CORPORATE BOARD OF DIRECTORS OF THE "DIAMOND STATE CASINOS, LIMITED" FROM CALLING AN ANNUAL MEETING OF THE STOCK HOLDERS WITH THE RIGHT OF THE STOCK HOLDERS BY PETITION TO REQUIRE THE BOARD OF DIRECTORS TO CALL A MEETING OF THE STOCK HOLDERS; AUTHORIZING THE "DIAMOND STATE CASINOS, LIMITED" UPON INCORPORATION TO OPERATE, HIRE AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING WITHOUT LICENSE, OR FEE BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF, ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN THE INTERIOR AREA OF ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF CRAWFORD, JEFFERSON, PULASKI, GARLAND, MILLER, CRITTENDEN, MISSISSIPPI, BENTON AND QUACHITA WITH SUCH STRUCTURE LOCATED WITHIN THOSE COUNTIES OR WITHIN ANY CITY AND TOWN WITHIN THOSE COUNTIES WITH THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOLIC BEVERAGES WITHOUT LICENSE, OR FEE BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF, WITHIN THE INTERIOR AREA OF THOSE STRUCTURES USED FOR GAMBLING ONLY DURING THE OPERATION OF GAMBLING (INCLUDING THOSE COUNTIES, CITIES AND TOWNS IN WHICH THE SALE OF ALCOHOLIC BEVERAGES IS OTHERWISE PROHIBITED); AUTHORIZING THE LEGAL SHIPMENT OF GAMBLING DEVICES; EMPOWERING THE GENERAL ASSEMBLY TO OPERATE A LOTTERY OR LOTTERIES IN ANY MANNER AND IN COOPERATION WITH ANY OTHER STATE OR STATES WITHOUT CONSENT OF THE GOVERNOR OF THE STATE; REQUIRING THE GOVERNOR UPON PETITION BY A MAJORITY OF EACH HOUSE OF THE GENERAL ASSEMBLY TO CALL A SPECIAL SESSION OF THE GENERAL ASSEMBLY; DEFINING "BINGO" AS THE RISKING OF MONEY ON A GAME PLAYED WITH NUMBERED CARDS CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM TO WIN A PRIZE OR MONEY; DEFINING "RAFFLE OR RAFFLES" AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE; DEFINING GAMBLING" AS THE RISKING OF MONEY ON A CONTEST OR CHANCE OF ANY KIND BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH GAMES OF CHANCE OR SKILL AND ANY COMBINATION THEREOF BUT FOR THE PURPOSE OF THIS DEFINITION SHALL EXCLUDE THE OPERATION OF A "LOTTERY OR LOTTERIES"; DEFINING "LOTTERY OR LOTTERIES" AS COMMONLY UNDERSTOOD TO BE A SPECIES OF GAMBLING WHICH MAY BE DEFINED AS A SCHEME FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID, OR AGREED TO PAY, A VALUABLE CONSIDERATION FOR THE CHANCE TO OBTAIN A PRIZE AND FOR THE PURPOSE OF THIS DEFINITION SHALL INCLUDE MONEY AS A PRIZE; DEFINING" STRUCTURE" AS ANY KIND AND SIZE OF BUILDING WITH ANY ATTACHED ADDITIONS CONSIDERED A SINGLE STRUCTURE TO INCLUDE ANY KIND AND SIZE OF ANCHORED WATER VESSEL WITH ANY ATTACHED ADDITIONS TO THAT WATER VESSEL CONSIDERED A SINGLE STRUCTURE; THE PROVISIONS OF THIS AMENDMENT SHALL TAKE EFFECT IMMEDIATELY UPON PASSAGE OF THIS AMENDMENT EXCEPT AS OTHERWISE PROVIDED AND REQUIRING THE GENERAL ASSEMBLY AND ANY AND ALL STATE OR LOCAL RULE MAKING AUTHORITIES TO MAKE ALL OTHER AND FURTHER LAWS AND REGULATIONS TO THE ENFORCEMENT OF THIS CONSTITUTIONAL AMENDMENT; MAKING THE PROVISIONS OF THIS AMENDMENT SEVERABLE; AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT;
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Pluggev. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic ActionCommittee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citingLeigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed ballot title due to ambiguities in the text
of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Section Three of your proposed amendment states that the General Assembly shall be authorized to "operate and provide for the operation of a lottery or lotteries. . . ." This language is ambiguous, in my view. I am uncertain regarding the difference between the General Assembly's authority to "operate" a lottery and its authority to" provide for the operation" of a lottery. Your proposed ballot title in this regard states only that the amendment empowers the General Assembly "to operate a lottery or lotteries in any manner and in cooperation with any other state or states. . . ." However, the General Assembly's actual authority under the amendment to "provide for the operation[,]" of a lottery appears to be unlimited, and could be interpreted, for instance, as authority to establish third party operator(s) of a lottery or lotteries. Because any constitutional amendment regarding lotteries will substantially change current state law (see Ark. Const. art. 19, § 14, prohibiting the state from authorizing a lottery), this ambiguity must be clarified for proper reflection in the ballot title.
 2. Section Six, subsection 1 (c) and (d) of the amendment define, respectively, "gambling" and "lottery or lotteries." I understand that it is your intention to distinguish between the two and to exclude "lotteries" from the authority to operate "gambling" under the amendment. I am uncertain, however, whether you realize that the definition of" lottery or lotteries" under the amendment may actually encompass some commonly understood forms of gambling. This follows from the fact that the amendment's definition of "lottery or lotteries" could include some forms of gambling that are controlled by chance alone, e.g., roulette.
 The statement in subsection 1 (d) that ""lottery or lotteries" means a commonly understood species of gambling" does not clarify the matter, in my opinion. Although your definition of "lottery" is consistent with the definition that has been accepted by the courts (See Scott v. Dunaway, 228 Ark. 943, 311 S.W.2d 305 (1958), this definition, without further clarification, could still include forms of gambling that are determined by chance alone. Your definition of "gambling" would thus preclude" Diamond States Casinos, Limited" from operating such forms of gambling. I am uncertain whether this is your intent.
 You may wish in this regard to refer to the case of Scott v. Dunaway, supra, 228 Ark. at 944, wherein the Arkansas Supreme Court noted that "[a]though a lottery may be conducted in many different ways, in its typical form it involves the sale of a relatively large number of chances and the selection of a relatively small number of winners by some system of drawing in which chance alone controls the result." While this may be the form of "lottery" envisioned under the amendment, the ambiguity that I have noted prevents me from substituting any ballot title language.
 3. Section Five of your proposed amendment requires the Governor to call a "special session" upon petition of the General Assembly. Currently, there are only two types of sessions of the General Assembly: the regular biennial sessions provided by Ark. Const. art. 5, §§ 5 and 17 and the sessions which the Governor by proclamation convenes under Ark. Const. art. 6, § 19, which have come to be known as "special sessions." See Purcell v. Jones, 242 Ark. 168, 412 S.W.2d 284
(1967). Thus, under current law, only the Governor has the authority to call the General Assembly into a session after a regular session. The Arkansas Supreme Court has characterized this as "an important constitutional power granted to the executive branch of the government." Wells v. Riviere, 269 Ark. 156, 166, 599 S.W.2d 375
(1980). Currently, moreover, the constitutional authority of the General Assembly to act after a regular 60-day session is limited to lawful extensions of a regular session, i.e., to finish legislative business of the regular session. See Wells, supra. The Arkansas Constitution thus currently contemplates that the General Assembly will convene once every two years, meet for 60 days, or longer if necessary, but finish its business and go home. Only the executive branch of government is granted the authority to reconvene the General Assembly if it becomes necessary. Id.
 This system of "checks and balances," as it is referred to in Wells, 269 Ark. at 167, would be significantly impacted by Section 5 of the proposed amendment. As I read Section 5, the amendment would authorize the General Assembly to, by petition of a majority of each house, meet any time it chooses for any purpose and length of time. According to the decision in Wells, the Governor's authority to call the General Assembly into session after a regular session would "become meaningless" (Id. at 166) or "be severely limit[ed]" (Id. at 167) if the General Assembly could meet at any time and consider any subject matter.
 It is thus apparent that your amendment would significantly change current law in this respect. Yet your ballot title makes no reference to these changes. The ballot title is thus insufficient. It must be redesigned to reflect these significant changes in current law.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP/cyh